FILED

2023 Mar-24  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

JENNIFER LYNN HUTSON,      )
                             )
     Plaintiff,          )
                             )
v.                       )     Case No. 6:21-cv-01495-SGC
                             )
COMMISSIONER, SOCIAL      )
SECURITY ADMINISTRATION,    )
                             )
     Defendant.        )

### MEMORANDUM OPINION[1]

The plaintiff, Jennifer Lynn Hutson, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").[2]  (*See* Doc. 1).[3]  Hutson timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 405(g).  For the reasons discussed below, the Commissioner's decision is due to be remanded, although not on all grounds urged by Hutson.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 12).

[2] Hutson asserts in her brief that she also applied for Supplemental Security Income.  (Doc. 15 at 1).  But the record reflects Hutson applied only for DIB.  (Tr. at 28, 153, 154, 165, 179, 192, 258).

[3] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __.  Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear as: Tr. at __.

1

## I.      Procedural History

Hutson has at least a high school education and prior work experience as a teacher's aide.  (Tr. at 40 at 61).  In her application for DIB, as amended, Hutson alleged she became disabled on January 16, 2019, due to a variety of impairments. (*Id.* at 28).   After her claim was denied, Hutson requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 28).  Following a hearing, the ALJ denied Hutson's claim on March 10, 2021.  (*Id.* at 28-42).  The Appeals Council denied review of the ALJ's decision on September 17, 2021.  (*Id.* at 1-4).  The decision then became the final decision of the Commissioner.  *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Hutson commenced this action.  (Doc. 1).

## II.     Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211

2

(11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.   20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Hutson met the SSA's insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since January 16, 2019, the amended alleged onset date of her disability.  (Tr. at 30).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).   If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii) and (c).  At the second step, the ALJ determined that through her date last insured Hutson had the following severe impairments: degenerative disc disease, osteoarthritis of the cervical and lumbar spine with a small

disc extrusion and an annular tear, cervical radiculopathy, right carpal tunnel syndrome status post-surgical release, fibromyalgia, and obesity. (Tr. at 31). The ALJ determined Hutson's depression and attention-deficit / hyperactivity disorder ("ADHD") were non-severe impairments. (*Id.*).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined that through her date last insured Hutson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (Tr. at 34).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not

4

disabled.  *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined that through her date last insured Hutson had the RFC to occasionally lift and/or carry 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk in combination for at least six hours during an eight-hour workday, with normal breaks; sit for between six and eight hours during an eight-hour workday, with normal breaks; occasionally climb ramps and stairs but not ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch and/or crawl; frequently perform fine and gross manipulations bilaterally; and tolerate occasional exposure to extreme heat, extreme cold, wetness, and humidity.  (Tr. at 24).  The ALJ determined Hutson could not perform overhead work activities with her upper extremities or be exposed to vibration or industrial hazards.  (*Id.*).  At the fourth step, the ALJ determined that through her date last insured Hutson was not able to perform her past relevant work.  (*Id.* at 40).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.*  at § 404.1520(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the

claimant is disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Hutson's age, education, work experience, and RFC, the ALJ determined that through her date last insured there were jobs existing in significant numbers in the national economy, such as those of office helper, storage facility rental clerk, and electronic worker, that Hutson could perform.  (Tr. at 40-41).  Therefore, the ALJ concluded Hutson was not disabled through her date last insured.  (*Id.* at 41-42).

## III.   Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

Hutson filed an opening brief in which she asserts four errors in relation to the administrative proceedings.  (Doc. 14).  She claims (1) the ALJ did not evaluate the opinions of Justin Anderson, Psy.D., and Keith Morrow, D.O.,  properly; (2) the ALJ erred by finding her depression and ADHD were non-severe impairments; (3) the ALJ failed to address multiple apparent conflicts between the testimony of the Vocational Expert ("VE") and the Dictionary of Occupational Titles; and (4) the Appeals Council failed to evaluate her additional evidence properly.  (Doc. 14).  The Commissioner then filed a motion seeking to remand the case for further consideration of Dr. Anderson's opinions and the VE's testimony.  (Doc. 15).

Hutson opposes the motion insofar as it does not seek remand for further consideration of all her asserted errors. (Doc. 16). The court considers below the assertions of error the Commissioner has not impliedly conceded.

### A.    Non-Severe Impairments

Step two of the sequential evaluation undertaken by an ALJ serves as a "filter or "screen" to weed out claims involving *no* severe impairment or combination of impairments. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Stratton v. Bowen*, 827 F.2d 1447, 1452, 1452 n.9 (11th Cir. 1987). "[T]he finding of *any* severe impairment . . . is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588 (emphasis added); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Based on our precedent and the regulations . . . it is apparent that there is no need for an ALJ to identify every severe impairment at step two."). However, if a case advances beyond step two, an ALJ must consider all impairments, severe or not, at later steps of the sequential evaluation. *Tuggerson-Brown*, 572 F. App'x at 951; *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Accordingly, where an ALJ commits error at step two, the error is harmless, provided the ALJ considers all impairments, severe or not, at later steps of the sequential evaluation. *See, e.g., Tuggerson-Brown*, 572 F. App'x at 951-52 (holding claimant could not demonstrate error where record demonstrated ALJ

considered severe and non-severe impairments after step two of sequential evaluation).

Any error the ALJ committed by failing to identify Hutson's depression and ADHD as severe impairments at step two is harmless because the ALJ considered these impairments at later steps of the sequential evaluation. The ALJ stated she evaluated whether Hutson had an "impairment or combination of impairments" that met or medically equaled the severity of one of the Listings and considered "all symptoms" in determining Hutson's RFC. (Tr. at 34). "Under [Eleventh Circuit] precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 952 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)).

**B.    Dr. Morrow's Opinions**

For DIB and SSI applications filed on or after March 27, 2017, new regulations for evaluating medical evidence apply. Relevant here, the new regulations alter how the SSA evaluates medical opinions. The old regulatory regime implemented a hierarchy of medical opinions and instructed an ALJ to assign an evidentiary weight to each medical opinion contained in the record by considering a laundry list of factors. *See* 20 C.F.R. § 404.1527(c). The new regulatory regime disposes of the aforementioned hierarchy and instructs an ALJ to articulate the persuasiveness of a medical opinion or the source of multiple medical opinions by

explaining (1) the extent to which the source offers support for the opinion(s) and (2) the consistency of the opinion(s) with the record. *See id.* at § 404.1520c(a), (b)(1) and (2), and (c)(1) and (2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." *See id.* at § 404.1520c(c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *See id.* at § 404.1520c(c)(2). The ALJ may, but is not required to, explain her consideration of other factors. *See id.* at § 404.1520c(b)(2).

To make explicit what is implied above, when one medical source provides multiple medical opinions, the new regulations do not require an ALJ to articulate the persuasiveness of each medical opinion. *See id.* at § 404.1520c(b)(1). An ALJ instead may "articulate how [she] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* This is "[b]ecause many claims have voluminous case records containing many types of evidence from different sources," as a consequence of which "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [she] considered all of the factors for all of the medical opinions." *Id.*

Dr. Morrow is a family practitioner who saw Hutson monthly between

January 2019 and December 2020.  (Tr. at 547-59, 619-33).  In a treatment record dated April 10, 2019, he opined Hutson should avoid repetitive motion with her right hand due to pain and swelling.  (*Id.* at 556).   He completed a Physical Impairment Questionnaire on January 5, 2021, stating Hutson suffered from constant, relatively severe neck and back pain; had a history of fibromyalgia syndrome, lupus, and neuropathy; and had functional limitations greater than those incorporated into the ALJ's formulation of Hutson's RFC.  (*Id.* at 635-39).  An unexhaustive list of those limitations according to Dr. Morrow is that Hutson could sit and stand or walk less than one hour during an eight-hour  workday with normal breaks; would require two or three unscheduled breaks during an eight-hour workday; had significant limitations in doing repetitive reaching, handling, and fingering; could only occasionally lift between one and five pounds; could never lift any weight greater than five pounds; and must avoid wetness, humidity, heights, noise, fumes, and gases.  (*Id.* at 638-39).  Dr. Morrow identified palpable spasms in Hutson's cervical and lumbar paraspinous muscles as the basis for his opinions.  (*Id.* at 635).  The Physical Impairment Questionnaire included a question asking Dr. Morrow to state his opinion regarding the onset date of Hutson's symptoms and limitations.  (*Id.* at 636).  Dr. Morrow did not answer the question.  (*See id.*).

The ALJ determined the opinions Dr. Morrow expressed on the Physical Impairment Questionnaire were unpersuasive because "they [were] not consistent

with his own treatment records or those of other physicians during 2019 and prior to the expiration of [Hutson's] insured status." (*Id.* at 39). The ALJ also determined the opinions did "not necessarily relate[] to the period at issue" because the Physical Impairment Questionnaire was dated January 5, 2021, and Dr. Morrow expressed no opinion Hutson's functional limitations existed before December 31, 2019, the date on which Hutson's insured status expired. (*Id.* at 40).

Hutson argues the ALJ erred insofar as she did not mention Dr. Morrow's April 10, 2019 opinion she should avoid repetitive motion with her right hand due to pain and swelling. (Doc. 14 at 11). She further asserts that with respect to the Physical Impairment Questionnaire the ALJ did not discuss the supportability and consistency factors with sufficient specificity. (Doc. 14 at 12-13). Finally, she contends the chronological irrelevancy of the Physical Impairment Questionnaire was not a valid reason for finding the opinions expressed in the questionnaire unpersuasive and that the opinions *did* relate to the relevant period because Dr. Morrow treated Hutson during that period. (Doc. 14 at 13).

The ALJ did not mention, explicitly, Dr. Morrow's April 10, 2019 opinion that Hutson should avoid repetitive motion with her right hand due to pain and swelling. But, as discussed above, the new regulations do not require an ALJ to discuss, explicitly, each medical opinion expressed by a medical source who offers multiple medical opinions. *See* 20 C.F.R. § 404.1520c(b)(1). Regardless, Dr.

Morrow expressed a substantially similar opinion in the Physical Impairment Questionnaire – that Hutson had significant limitations in doing repetitive reaching, handling, or fingering – and the ALJ did discuss, explicitly, the Physical Impairment Questionnaire.

As stated, Hutson argues the ALJ failed to address adequately the supportability and consistency factors in relation to the Physical Impairment Questionnaire. The court disagrees. The ALJ did not follow her statement regarding the unpersuasiveness of Dr. Morrow's opinions with statements regarding the specific evidence that is inconsistent with each specific opinion. But the ALJ discussed the supportability and consistency of Dr. Morrow's opinions in a general way elsewhere in her opinion. Again, the new regulations do not require an ALJ to discuss, explicitly, each medical opinion expressed by a medical source who offers multiple medical opinions. *See* 20 C.F.R. § 404.1520c(b)(1). And the court does not interpret the new regulations or the case law to require an ALJ to structure her discussion of a medical source's medical opinions in a particular way.

The ALJ noted that, beginning in April 2019, Dr. Morrow detected palpable cervical and lumbar spasms on examination of Hutson but did not note any associated objective motor, sensory, reflex, or focal neurological deficits; muscle atrophy; gait or mobility deficits; swelling, edema, synovitis, or effusion; or passive range of motion deficits. (Tr. at 36; *see also id.* at 547-59, 619-33). The ALJ noted

records of Deepak V. Sree, M.D., of Rheumatology Associates of North Alabama, P.C., showed Hutson described her low back pain in June 2019, shortly before expiration of her insured status, as only periodic, flaring up "from time to time," and resolving "in about a week or so." (*Id.* at 37; *see also id.* at 479). A record from a follow-up visit with Dr. Sree in October 2019 documented Hutson's evaluation for lupus as unremarkable and her fibromyalgia as having improved. (*Id.* at 477). Imaging of Hutson's cervical and lumbar spines performed in November 2019 at the request of David R. Longmire, M.D., a neurologist, revealed abnormalities described as no more than "small" or "mild." (*Id.* at 456-57). Motor nerve studies of the median and peroneal nerves performed by Dr. Longmire's office in November 2019 revealed normal findings. (*Id.* at 459). The ALJ discussed Dr. Sree's October 2019 record and Dr. Longmire's objective findings. (*Id.* at 37-38). She also noted Dr. Morrow did not identify any hand- or wrist-related pain or objective findings as a basis of the opinions expressed in the Physical Impairment Questionnaire. (*Id.* at 37). The discussion above shows the ALJ did consider the supportability and consistency factors relative to Dr. Morrow's medical opinions, and her determination the opinions were unpersuasive is supported by substantial evidence.

Because the ALJ considered the supportability and consistency factors, her determination regarding the Physical Impairment Questionnaire's lack of chronological relevancy was not the only reason for discounting the questionnaire.

Moreover, that determination was not in error.  Dr. Morrow expressed no opinion in the questionnaire, which post-dated Hutson's date last insured, as to the onset date of Hutson's symptoms and limitations.  (*See id.* at 636).

### C.    Evidence Considered by Appeals Council

A claimant generally may present additional evidence at each stage of the administrative process.  20 C.F.R. §§ 404.900(b), 404.970.  The Appeals Council must consider "new, material, and chronologically relevant evidence" submitted by a claimant.  *Id.* at § 404.970.  Evidence is new if it is not merely cumulative of the evidence that was before the ALJ.  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).  Evidence is material if there is a reasonable probability it would change the administrative result.  *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  Evidence is chronologically relevant if it relates back to the time of the ALJ's decision. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015).

Whether evidence is new, material, and chronologically relevant is a question of law subject to *de novo* review.  *Id.* at 1321.  Where the Appeals Council refuses to consider new, material, and chronologically relevant evidence, it commits an error of law, and remand to the Commissioner for consideration of the evidence in conjunction with the record is appropriate.  *Id.*

Hutson submitted to the Appeals Council a supplement to the Physical Impairment Questionnaire completed by Dr. Morrow.  (Tr. at 8).  In the supplement,

dated May 13, 2021, Dr. Morrow indicates Hutson has limited ability to use her hands to grasp, turn, and twist objects; to use her fingers for fine manipulation; and to reach out and overhead with her arms. (*Id.*). Dr. Morrow further indicates the limitations he noted in the January 5, 2021 Physical Impairment Questionnaire were present as of January 2019. (*Id.*). The Appeals Council determined there was not a reasonable probability the supplement would change the administrative result and, therefore, declined to exhibit the evidence. (*Id.* at 2).

Hutson argues the Appeals Council erred insofar as Dr. Morrow's supplement addressed the ALJ's reason for determining his January 5, 2021 Physical Impairment Questionnaire was unpersuasive: that it did not relate to the relevant period. (Doc. 14 at 19). However, as discussed above, the ALJ did not determine the Physical Impairment Questionnaire was unpersuasive for the sole reason it did not relate to the relevant period. The supportability and consistency factors also informed the ALJ's determination. The ALJ found the medical opinions Dr. Morrow expressed in the Physical Impairment Questionnaire were not supported by his own records or consistent with the records of Hutson's other treating providers. Given this independent basis for determining the Physical Impairment Questionnaire was unpersuasive, there is no reason to believe Dr. Morrow's May 13, 2021 statement the functional limitations noted on the January 5, 2021 Physical Impairment Questionnaire were present as of January 2019 would have induced the ALJ to reach

16

a different conclusion.

Hutson also argues there is a reasonable probability the opinions Dr. Morrow expressed in his May 13, 2021 supplement regarding her limitations in using her hands, fingers, and arms would change the administrative result because these limitations are inconsistent with the requirements of the jobs for which the ALJ found her capable.  (Doc. 14 at 19).  Dr. Morrow expressed substantially the same opinions in his January 5, 2021 Physical Impairment Questionnaire.  He simply used slightly different verbiage.  (*See id.* at 638).  Accordingly, there is not a reasonable probability the "new" opinion regarding Hutson's limitations in using her hands, fingers, and arms would result in a different administrative outcome.

## V.    Conclusion

The Commissioner's motion to remand this case for further consideration of Dr. Anderson's opinions and the VE's testimony (Doc. 15) is due to be granted. Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision otherwise is due to be affirmed.  A separate order will be entered.

**DONE** this 24th day of March, 2023.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE